**HOLMES, TAYLOR, COWAN & JONES LLP**
Stephen P. Jones (SBN: 150050)
Stephen.Jones@holmestaylor.com
811 Wilshire Blvd., Suite 1460
Los Angeles, California 90017
Tel:  (213) 985-2200
Fax: (213) 973-6282

Attorney for Defendant
PEJMAN VINCENT MEHDIZADEH

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>          vs.<br><br>PEJMAN VINCENT MEHDIZADEH,<br><br>                    Defendant. | Case No. 2:19CR00084-MWF<br><br>DEFENDANT PEJMAN VINCENT MEHDIZADEH'S SENTENCING POSITION<br><br>Date: 6/17/19<br><br>Time: 2 p.m.<br><br>Hon. Michael W. Fitzgerald |

Defendant PEJMAN VINCENT MEHDIZAEH now comes before the Court for sentencing.

1. <u>SUMMARY OF DEFENDANT'S POSITION.</u>

Mr. Mehdizadeh concurs (gratefully) with the Probation Officer's recommendation of both a Criminal History departure, and a variance, to a probation. He believes, however, that a sentence "sufficient, but not greater than necessary," under 18 U.S.C. Section 3553(a), **need not necessarily include a six-month term of home confinement as a term and condition thereof**. He also concurs with the Probation Officer's assessment that the SEC judgment to which he is subject renders him financially unable to pay a fine. (Other than the mandatory $100 Special Assessment.)

Holmes, Taylor, Cowan & Jones LLP
811 Wilshire Blvd., Suite 1460
Los Angeles, California 90017

1

2

3

Both in regard to the question of appropriate terms and conditions of probation, and in regard to the question of his financial ability, Mr. Mehdizadeh further respectfully notes that he recently borrowed, and paid to the Bankruptcy Trustee, **$65,000.00 in restitution**.

4

2.  PROCEDURAL HISTORY

5

6

7

8

9

Defendant PEJMAN VINCENT MEHDIZADEH first appeared in this matter on February 26, 2019, in response to a Summons. At that time, he waived Indictment, agreed to be charged by Information (Item 1 on the Court's docket), and entered a "not guilty" plea to a single count charging a violation of 18 U.S.C. §152 (1), Fraudulent Concealment in Bankruptcy. He was subsequently released on a $15,000.00 unsecured appearance bond.[1]

10

11

12

On March 14, 2019, Mr. Mehdizadeh appeared before this Court, and changed his plea to "guilty," pursuant to a written Plea Agreement (Item 6). The Court accepted that plea, then set sentencing for today's date.

13

3.  PLEA AGREEMENT

14

15

16

17

18

Mr. Mehdizadeh's Plea Agreement sets an **Adjusted Offense Level of 12**. (P. 10, ¶12.) It also commits the government to recommend a sentence at the "low end" of the guideline range. (P.4, ¶3.f.) It further obligates the government to move for a downward departure in Criminal History Category, to Category II, *if* the U.S. Probation Office (USPO) had determined his Criminal History Category to be any higher. (pp.3-4, ¶3.e) (Which it did not.)

19

20

21

22

23

The low-end guideline sentence for an Adjusted Offense Level 12, Criminal History Category II offense, would be **12 months**. Such a sentence would also fall under **Zone "C"** of the Sentencing Table – thus rendering it eligible to be served as a "split" sentence. (U.S.S.G. §5C1.1(d)(2).) The Plea Agreement also explicitly allows Mr. Mehdizadeh to argue for a variance from the guideline range. (P.11, ¶13.)

24

4.  PRE-SENTENCE REPORT.

25

26

The U.S. Probation Office's Recommendation Letter and Pre-Sentence Report (PSR) herein (Items 21& 22) recommend **both** the aforesaid Criminal History departure, and a

27

28

[1] Mr. Mehdizadeh also surrendered his U.S. passport.

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

1  **variance** -- to **probation**, with a **six-month term of home confinement** as a term and

2  condition. To date, the government has not objected to the PSR. Mr. Mehdizadeh has

3  previously filed (and served) a Response to the Pre-Sentence Report (Item 23), in which he

4  indicated that he, likewise, has no objections thereto.

5      5.  STATEMENT OF FACTS

6      Mr. Mehdizadeh's plea herein arises from what were originally parallel investigations by

7  the Securities and Exchange Commission (SEC) and the Federal Bureau of Investigation,

8  (FBI). These investigations focused upon a company which Mr. Mehdizadeh had founded in

9  2010, called "Medbox,Inc." Mr. Mehdizadeh founded Medbox largely for the purpose of

10  marketing and selling his patented invention --also called "The Medbox." The Medbox is an

11  automated safe or strongbox for secure storage of medical cannabis, which employs

12  biometric sensors to identify patients, then accesses electronic prescription data, in order to

13  accurately and safely dispense to the patient their prescribed dose.

14      In the early part of this decade, Medbox, Inc. was – for a time -- a huge hit in the

15  Over-the-Counter (OTC) securities market; and its management attempted to take the

16  company public. Questions arose, however, regarding the company's revenue recognition

17  practices, whether those practices rendered its public filings inaccurate, and whether

18  particular Medbox shares that a Mehdizadeh affiliate (his then-girlfriend's company) had

19  sold to the public were actually restricted at the time, and thus not yet available for such sale.

20  (Due to Medbox's acquisition of another, already-public "shell" company, in a "reverse

21  merger.")

22      The SEC eventually brought a civil action against Mr. Mehdizadeh (among others),

23  regarding Medbox, Inc.'s accounting and reporting practices (and their effect on share

24  prices), from 2012-2014. In 2017, Mr. Mehdizadeh settled this action (on a "neither admit

25  nor deny" basis), on terms which include disgorgement of over $6,000,000.00, and penalties

26  in approximately the same amount, for a total judgment in excess of $12,000,000.00.

27

28

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

   **The government, however, eventually elected not to pursue separate criminal securities charges against Mr. Mehdizadeh.** Instead, the charge to which Mr. Mehdizadeh pleaded "guilty" herein arises from a Chapter 7 personal bankruptcy petition that he filed in June of 2010.[2] As set forth in the Information, Mr. Mehdizadeh omitted from the filings associated with that petition: a) his ownership interest in two corporations; which were in turn the owners of b) a patent application, and a resulting patent, both related to The Medbox; and c) approximately $65,000.00 in cash, acquired by Mr. Mehdizadeh in the 180-day period immediately after filing, and thus the presumptive property of the bankruptcy estate.[3]

   6.   MR. MEHDIZADEH CONCURS WITH THE PRE-SENTENCE REPORT AND THE PROBATION OFFICER'S RECOMMENDATION OF PROBATION.

   As noted above, Mr. Mehdizadeh agrees that probation is the appropriate sentence in this matter. Mr. Mehdizadeh further believes that the age of the offense (as to which he entered into thirteen tolling agreements), its particular nature and circumstances, its relative seriousness (and relatively small loss), and his manifest willingness to accept responsibility (as demonstrated by his plea, his settlement of the related SEC matter at "full value," his willingness to toll in regard to the investigation as a whole, and his payment of full restitution herein) all support such a sentence. The Probation Officer further noted some unique (in fact, difficult and tragic) family history and circumstances that both she and Mr. Mehdizadeh believe are relevant in mitigation.

---

[2] This charge is not time-barred because Mr. Mehdizadeh entered into thirteen separate tolling agreements, between mid-2016 and late 2018, while he and the SEC worked out their settlement, and the government (with input from his counsel) determined that it would decline to charge him criminally in regard to that portion of its investigation.

[3] Mr. Mehdizadeh's Plea Agreement further notes (at ¶10, p.9, ll. 14-17) that "the value of the . . . Patent during the time of the pendency of defendant's bankruptcy proceeding cannot be determined with certainty due to subsequent intervening events related to the . . . Patent." Accordingly, that Agreement sets the loss herein at less than $95,000.00 per U.S.S.G. §2B1.1b(1)(d). The $65,000.00 in cash includes earnings from his consultancy business, and gambling winnings.

1

2

3

In addition, the parties and Probation Officer unanimously agree that the potentially aggravating factor – his prior criminal history – is, at the very least, not as aggravating as it might appear at first blush.

4

5

A. Both the PSR and the Plea Agreement Call for a Departure in Regard to Criminal History.

6

7

8

9

10

11

12

13

14

15

16

17

As set forth more fully in the PSR, Mr. Mehidzadeh has two prior felony convictions that fall "within time" for present purposes. In 2009, he was convicted of Unauthorized Use of a Credit Card, in violation of California *Penal Code* §484g(a); and in 2013, he was convicted of Grand Theft under *Penal Code* §487(a.)[4] (The earlier conviction involved collection of payments due to Mr. Mehdizadeh from the sale of a used Porsche automobile; the latter from the collapse of an immigration attorney referral service managed by Mr. Mehdizadeh and his father.) He was also on probation for the earlier of these two offenses at the time of the offense alleged in the Information. This would normally place Mr. Mehdizadeh in Criminal History Category III. The parties and the Probation Office all agree, however, that Criminal History Category III would substantially overstate the seriousness of Mr. Mehdizadeh's Criminal History, and that the Court should, instead, depart downward in this regard.

18

19

20

21

As previously noted, in the Plea Agreement (at pp. 3-4, ¶3.e) the government specifically agreed to move for such a departure, if necessary -- with "necessary" being defined as a finding by the Probation Office that Mr. Mehdizadeh's Criminal History exceeded Category II.

22

23

24

25

26

27

28

[4] As well as an "out-of-time" burglary conviction he suffered at age 19, and several misdemeanor convictions. (All either "out-of-time," or otherwise resulting in no Criminal History points.) Per California *Penal Code* §§17(b) and 1203.4, prior counsel reduced the burglary to a misdemeanor and obtained dismissal; and present counsel obtained dismissal of both the most recent state-court felony conviction, and all but one of the misdemeanor convictions. Some of this relief does not yet appear on Mr. Mehdizadeh's Cal-DOJ Criminal History, but present counsel has made a request for update and correction. (As well as for correction of his NCIC Criminal History, which includes an outright error in regard to one of his relevant convictions.) Unfortunately, however, Section 1203.4 does not qualify as an "expungement" statute under U.S.S.G. §§4.A1.2(c) and (j), so the dismissed "in-time" felony still "counts" for Criminal History purposes.

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

Instead, however, the Probation Officer notes in the PSR (at p. 22, ¶112), as a "factor that may warrant a departure," "overstatement of criminal history," after earlier noting (at p.4, ¶4) that "the parties agree that a downward departure . . . to a Criminal History Category II is applicable." And her Recommendation Letter concludes (at p.6) "that [such] a departure . . . more closely represents both the seriousness of his criminal history and the likelihood that he will commit other crimes."

The factors to which the Probation Officer looked, in so concluding, include the relative seriousness of the prior offenses; their age (all occurring no later than 2008); their non-violent nature; the fact that they were unrelated to drug trafficking (despite an inaccuracy on Mr. Mehdizadeh's NCIC Criminal History in this regard); and the fact that Mr. Mehdizadeh made full restitution in both matters. (And did so, as here, prior to sentencing.)

Mr. Mehidzadeh further believes that adding two Criminal History points (under U.S.S.G. §4A1.1(d)) for being on probation at the time of the instant offense, when neither the offense for which he was on probation, nor this one, are relatively serious, and each resulted in purely financial harm, would be fundamentally unfair. Further, as set forth below, all of Mr. Mehdizadeh's most troubling conduct – including both the "priorable" offenses, and the instant offense – took place, as the Probation Officer further noted, during a short but exceedingly dark period in his life. (Leading up to, and following, his mother's death by suicide.)

Mr. Mehdizadeh therefore believes – as do the Probation Officer and the government – that the agreed departure is wholly warranted.

B. <u>Mr. Mehdizadeh Concurs with the Probation Officer's Recommendation of a Variance and a Sentence of Probation.</u>

Mr. Mehdizadeh further believes that the following factors support a probationary sentence: the age of the offense; its (relative) seriousness and lower loss amount; Mr. Mehdizadeh's acceptance of responsibility; his payment of full restitution; and finally, as the

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

Probation Officer set forth, some unique (in fact, difficult and tragic) history and characteristics – which include his mother's suicide, shortly before the offense at issue.

### 1. Age of the Offense

Both the PSR, and the Probation Officer's Recommendation Letter, address not only the age of Mr. Mehidzadeh's prior offenses, but also the age of the instant offense – pointing out that it also took place nine years ago, in 2010; and that even the civil allegations of the SEC complaint date from no more recently than 2014. And as set forth further below, not only this offense, but all of Mr. Mehdizadeh's most troubling conduct, took place in the short but exceedingly difficult period in his life leading up to and following the death of his mother.

### 2. Relative Seriousness and Loss

Mr. Mehdizadeh does not wish to unduly minimize the fact that he has pleaded guilty to a federal felony. Nevertheless, the same analysis that the Probation Officer applied to his prior offenses applies equally to this one: it was a non-violent, "paper" offense, as to which he has made full restitution -- prior to sentencing, in regard to a loss where doing so entailed borrowing a relatively manageable amount of money.

### 3. Acceptance of Responsibility

As noted above, during the course of this investigation, Mr. Mehdizadeh entered into a total of thirteen tolling agreements, between mid-2016 and late 2018, as he attempted to resolve all of its aspects. In 2017, he settled his portion of the related SEC matter – and while he did so on a "neither admit nor deny" basis, he also agreed to a judgement for "full value." (Including over $6,000,000.00 in disgorgement, and an equal amount in penalties, for a judgment in excess of $12,000,000.00.) And while he actively contested, in lengthy negotiations with the government, whether he ever possessed the requisite intent to commit a criminal securities violation, he then willingly entered into a Plea Agreement which fully addresses those matters (set forth in Count One of the Information) as to which he admits he did possess the requisite intent – at the very least, "willful blindness" to the nature and

1  consequences of his actions in the bankruptcy. Throughout this process, Mr. Mehdizadeh

2  remained engaged with and responsive to the government, until he was satisfied that the

3  resolution was commensurate with his conduct – and then resolved his matters.

4              4.  Restitution

5              Mr. Mehdizadeh has also, as set forth above, made full restitution in regard to this

6  matter. Attached hereto as Exhibit "A," the Court will find a check drawn on Mr.

7  Mehidzadeh's counsel's trust account, made payable to Mr. Mehidzadeh's bankruptcy

8  estate, in payment of full restitution herein.[5]

9              5.  Family History and Circumstances

10             Finally, as already noted above, and as set forth in both the PSR and the

11 Recommendation Letter, on Valentine's Day 2008, Manijeh Sadri, Mr. Mehdizadeh's

12 mother, committed suicide by a gunshot wound to the head. (Mr. Mehdizadeh found both

13 her farewell note, and her body.) Like her son (and his father), Manijeh had come to the

14 United States from Iran in 1980, after the Iranian Revolution and the overthrow of the Shah.

15 (In whose cabinet the elder Mr. Mehdizadeh had served.) At the time of her death, she was

16 divorced from Mr. Mehdizadeh's father, and had been since 2002. Since that time, Mr.

17 Mehdizadeh had been responsible for her emotional, and for at least a good part of her

18 financial support.

19             As the PSR further notes, his mother's death utterly devastated Mr. Mehdizadeh; and

20 both the years leading up to it -- as her depression grew worse -- and those following, were

21 an exceedingly dark time in his life. Not only both of his arrests, as to both of his "in-time"

22 prior felonies, but also the personal bankruptcy filing that led to the present charges, all took

23 place between October 2006 and June 2010. It is difficult to ascribe this to coincidence – just

24 as it is difficult to ignore that Mr. Mehdizadeh has altered his conduct significantly since.

25

26

27 _____

[5] Mr. Mehdizadeh also recently received *ex parte* notice that his bankruptcy has been re-opened, for

28 the purpose of receiving and distributing these funds to his creditors.

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

C.  Mr. Mehdizadeh Accordingly Believes that the Court Could Craft "Sufficient, but not Greater Than Necessary" Terms and Conditions of Probation That do not Include a Six-Month Term of Home Confinement.

Mr. Mehdizadeh is entirely grateful for the Probation Officer's recommendation of a probationary, non-custodial sentence. He nevertheless respectfully submits that he believes that under all of the circumstances set forth above, it would be well within the Court's discretion, and well within the ambit of 18 U.S.C. § 3553(a), for it to impose terms and conditions of probation that included either a shorter term of home confinement, or none at all. In particular, Mr. Mehdizadeh respectfully submits that after having gone nine years without committing any further criminal offenses, there is very little likelihood that he will do so in the future, and thus very little need to impose a term of home confinement for the purpose of specific deterrence. (*See*, 18 U.S.C. §3553(a), subsections (a)(2)(B) and (C).)

D.  Mr. Mehdizadeh Also Concurs With the Probation Officer that the SEC Judgment, and Payment of Full Restitution Herein, Leaves Him Unable to Pay a Substantial Fine.

Mr. Mehdizadeh is over $12,000,000.00 in debt to the SEC. He borrowed the money he used to pay restitution herein. And while his monthly income is not insubstantial, he is currently responsible for the support of not just his own home (and a family which includes his new wife), but also supports his elderly father in his own apartment. (His brother, who is presently only partially employed, also resides temporarily with the father, and Mr. Mehdizadeh presently provides him with a small monthly stipend.) Under these circumstances, Mr. Mehdizadeh is unable to pay a fine.

E.  On the Other Hand, Mr. Mehdizadeh's More Recent History and Family Circumstances Actually Render Him Substantially Unlikely to Re-Offend.

As set forth above, Mr. Mehdizadeh married his wife Anya in September 2017. (Shortly after he settled the SEC matter.) Mr. Mehdizadeh and his wife, though, have been waiting to start a family until the "criminal side" of this matter can be fully resolved -- and especially, until it becomes clear that he will (hopefully) not face incarceration. (They have also been attending couples' counseling to help deal with the stress of these proceedings.) Combined

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

Holmes, Taylor, Scott & Jones LLP
617 S. Olive Street, Suite 1200
Los Angeles, California 90014

1  with the fact that he is presently the sole support of his elderly father, and at least

2  temporarily a substantial source of support for his brother, Mr. Mehdizadeh is extremely

3  well-motivated to avoid any further legal problems, of any nature.

4      7.  <u>MR. MEHDIZADEH RESPECTFULLY REQUESTS THAT THE COURT ORDER
5          THE RETURN OF HIS PASSPORT AT THE APPROPRIATE TIME.</u>

6      As noted above, Mr. Mehdizadeh surrendered his passport at his first appearance. He

7  understands that the appropriate time at which to order its return will depend upon the

8  sentence the Court sees fit to impose. He respectfully requests, however, that the Court

9  include in the Judgment and Commitment Order directions for its return, at that time.

10     8.  <u>CONCLUSION</u>

11     For the reasons set forth above, Defendant PEJMAN VINCENT MEHDIZADEH

12  respectfully urges the Court to impose a sentence of probation, with suitable terms and

13  conditions.

14

15  Dated:                              **HOLMES, TAYLOR, COWAN & JONES LLP**

16

17

18  Stephen P. Jones
    Attorneys for Defendant
19  PEJMAN VINCENT MEHDIZADEH

20

21

22

23

24

25

26

27

28